We will hear argument next in number 231791, Doggyphone v. Tomofun. Mr. Lowe. Thank you and good morning, your honors. May it please the court, my name is David Lowe and I represent Plaintiff Appellate Doggyphone LLC and its sole owner and the inventor of the patents at issue, Dr. Andrew Davis. Your honor, in rushing to summary judgment the district court improperly modified claim construction, misapplied the law and failed to draw all justifiable inferences about facts in favor of the appellate Doggyphone and ignored genuine issues material fact, thereby invading the purview of the jury. Summary judgment is only appropriate when no reasonable trier of fact could find that every limitation recited in a properly construed claim in the accused device is infringed. Counsel, to confirm, you are not challenging the district court's conclusion that delivery module limitation is a means plus function limitation, right? Correct, your honor. On appeal we are not doing that. Can you start with the, I guess what in the district court's opinion is the third issue is I think your third issue and Red's first issue. The system begins transition in response to input from the patent. Of course, your honor. If the district court was right about that, we don't need to reach the other two issues. I'll just say my current view coming in right now is that's the biggest challenge you have. Certainly, I'm happy to and I do agree out of the three limitations, any one of them would be dispositive for the reasons set forth in our briefing and I'll address here today. The district court got it wrong on all of them. The begins transmission to the remote client device requires two steps. A transmission to the remote client device of at least one of live audio or video and that the transmission quote begins in response to input from the pet. Now, there's no dispute that the accused furbo device transmits live audio or video as those terms are defined in the claim construction. Neither side's experts, the court didn't disagree. We know that live audio or video does go from the doggy phone or the furbo system to the remote device. So the question is whether that transmission begins in response to input from the pet and this is where the court's claim construction and the integration of what occurred at the IPRs and the prosecution history is important. Because in the IPRs and the claim construction, there was an argument that in response meant triggered or in other words directly from the input of the pet with no intervening steps, nothing else occurring, then the transmission must begin and end to the remote device. And the court confirming that the IPRs did rejected that and said no, it should be triggered or otherwise cause the connection. Counsel, I thought in the briefing you indicated that you were not challenging the claim construction on this limitation. Is that right? No, because the court's claim construction was triggered or causally connected, which is consistent with what we believe is accurate. So the answer is you are not challenging the court's claim construction on this limitation, is that right? Right. Your earlier question was directed to the means plus function, correct? Right. So I have a new question. Okay. And the new question here would be you are not challenging the claim construction on this particular limitation. Is that accurate? To the extent the court applied that, yes, that's correct. Triggered or otherwise causally connected. That claim construction we are not challenging. So what are you challenging? Maybe that's the way I should phrase it. We're challenging the court's erroneous conclusion that the existence of intervening steps means that there was not causal connection between the input of the pet and the transmission of the live audio or video to the remote device. As is outlined in the briefing, there's two states. We tried to make it very clear. There's the one state, at rest, where there's no input from the pet, the device, the system is as it is. The remote client with the user is somewhere else. The dog, in this case, the pet barks. That input then triggers or causally connects and begins the process of transmission. And it doesn't matter. It does not begin transmission. What it does is it triggers or it launches the sending of a text message, right? But there is no transmission at that point. And if I'm the human involved, I may get this text message and it may be 15 minutes later that I look at it. At that point I can say, oh, my dog sent me a message, basically. At that point I'm going to send some kind of message back at which point there is live video or audio from that moment. Nothing has been transmitted from the in-home device to the phone by then and that's the principle mode we're talking about. There's also this kind of recording mode up in the server, right? And the problem with that is that by the time it gets to the phone it's not live. But this one that we're talking about, the transmission of live video does not, in fact, begin when the dog barks. With due respect, Your Honor, we disagree. We disagree. If the patentee during prosecution had wanted to say the transmission must begin and end to be complete from the system to the remote device, they could have drafted the claim that way. They did not. They included purposely the term begin because the definition of begin to proceed to perform the first or What has to be transmitted is live video or audio. That is something that occurs over time. So there's no necessary end point at all. Of course you could use a word like begins. I suppose begins and ends, that doesn't make any sense with live video and audio. Begins and the system has to begin the transmission. And if all that's done is sent, this is, I think, the district court's reasoning and I'm trying to understand what your answer to that is. In fact, there's no live audio and video that begins when the dog barks. It could be 15 minutes later when the human reads the text message and says, now I have time to watch. Your Honor, again, I think that's incorrect and let me explain why. How is that incorrect? The normal operation of the device is that the... No, no, no, I'm going to ask you this. Sure. If the dog barks, the device sends a text. That's the way it works, right? The dog barks, they send a text to the editor. They begin the process... No, your dog is active and you can see the live video or audio. It happens if the owner decides he or she doesn't care and never, ever responds to that text. Okay. And live audio is never transmitted, right? Are you asking me if there are certain situations where the claim limitation is not met in the operation of the verbal device? Yes, there are exceptions, but the exception doesn't obviate the fact that the normal and intended operation of this... You can't talk over me. Sorry. What I'm trying to get at is the transmission never begins until the owner responds to the text. There's an intervening step where the owner says, do I want to see it now or not? Yes. And if the owner says no, there's never live transmission. Sorry, I'm interrupting you too. I shouldn't do that, but I get to and you don't. I'll try not to do it too much. But the problem is, this says the live audio is in response to the pet signal, but the live audio is only in response to the owner's signal. With due respect, the pet notifies the owner it can receive live transmission, but it is not in response to the pet. May I, Your Honor? I disagree, because there is no transmission without the important act of the pet, the input from the pet. But this doesn't say it that way. I mean, I think you've written a very narrow claim language here that has gotten you into problems, because it talks about the live audio being transmitted in response to input from the pet, which doesn't encompass being transmitted in response to requests from the owner. The claim, as interpreted by the court, construed by the court, triggered or causally connected. With due respect, Your Honor, I believe it should not be disputed that there is a causal connection between input from the pet and what we know actually occurs, transmission of live audio or video. There is a causal connection, because without the input from the pet, that would never have occurred. Okay. I get your point on that. Can we go back to the means plus function claim? Certainly. You said that you agree that delivery model is means plus function. Correct. Which means you're confined to the patent. Correct. And equivalence. Where did you argue equivalence? We don't have to argue equivalence, Your Honor. To begin with, are you talking, I assume you're talking about the dispenses from the treat, the second of the two limitations focused on by the district court. I'm just talking about the structure. The structure in the patent uses a carousel and the infringing device does it. Your Honor, that's only one of the several embodiments of structure that are set forth. Is there one that matches up to the infringing device? There is. There is, specifically. I'll point it out to you. I can cite you letter in verse. The specification teaches the use of mechanism configured to eject the treat under the floor, appendix 56, as well as the use of one or more of the carousel. It's not helpful on a patent that looks like this. It's somewhere on this page. It's a column line method. All right. Appendix 56, column 5, 6 through 7, it talks about ejecting a treat onto the floor. And in appendix 56-6, 48 to 52, it talks about one or more of a carousel slide bin actuator, which is another word for piston, modal for delivering the treats. It talks further on about the carousel also being considered a bin or other container that can be coupled to a motor or a chute. The Ferbo treat tosser, Your Honor, constitutes a mechanism that ejects the treat onto the floor, includes one or more of the carousel slide bin actuator or motor. In fact, what it does is it includes a bin which holds the treat, dispenses it to the pet via a piston, which is literally an actuator, and then retracts and extends to launch or eject. The structure that covers that specifically is in fact disclosed. And the district court's error here was it agreed with that in the original claim construction. And then without giving any notice, I understand this court has sanctioned rolling claim construction, but only in situations where complicated cases, where there is a hearing or evidentiary trial, where new matter comes in, and where the other side, the affected party, has a chance to see and respond. Here what the district court did is, out of the blue, it took proper claim construction, and then it suddenly limited that to only one of the structures or the embodiments, the carousel. And it disregarded all of the other alternative embodiments. And it violated the cardinal sin of patent law, which is to improperly import a limitation, or in this case, a preferred embodiment into the claim. Nowhere in the claim does it limit to a carousel. That was only one of several embodiments. So if the structure that's set forth at these locations throughout the patents does provide for bins, actuators or pistons, slides, exactly the things that are found in the furbo, that is covered. At a minimum, Your Honor, that creates a genuine issue material fact, as does the beginning transmission. The judge here invaded the purview and denied doggy phone its day in court because it took what are genuine issues of material fact. The fact that the district court believed in its own opinion that these were interpreted or should be applied one way. But it's the purview of the jury when it comes to factual, the scope of these equivalences, or in direct or literal infringement. With respect to equivalence, Judge Cunningham, you ask, why didn't you argue that? Well, it's because there was a bit of a slide at the end. He actually, I think, asked, why didn't you argue that? There was a slight of hand right here because the district court provided the claim construction, which doggy phone looked at and said, great. In fact, they believed the district court's claim construction. They brought summary judgment of its own accord. And then they get to the summary judgment and without any warning, the district court then changes the claim construction, not based on any new evidence or anything like that, disregarded doggy phone's own experts in favor of that of Tomathon, which is improper because there wasn't a credibility determination as argued by Tomathon. There was no evidentiary hearing. There was no opportunity to evaluate credibility. And they denied doggy phone a stay in court. And that's all it's asking for on these genuine issues of material fact. You have used your rebuttal time. We'll restore it. But the clock is for the entire thing. And we'll hear from Mr. Giroux. Thank you, Your Honor. Giroux, sorry. Both names are wrong. Thank you, Your Honor. May it please the courts, I'd like to just pick up on that last conversation regarding the dispenses of treats, means plus function limitation. I think there are two being the progression of the court's claim construction and whether or not notice was provided of the eventual final construction set forth in the summary judgment. And the second one being what the actual corresponding structure is in the patent. First, regarding the procedural note, in the original claim construction, the court explicitly pointed to figures three and four when identifying the corresponding structure for this dispenses of treats limitation. And if you look at figures three and four, you see that carousel structure, the slide, the activation door, the exact structure that the court eventually then described in further detail verbally in the summary judgment order. This was sufficient at least for TOMO fund to obtain supplemented expert report, supplemented expert analysis with respect to means plus function construction and that full corresponding structure. Was there reference in the claim construction order to some of the other structures that are mentioned in the spec, the ones, say, right at the top of column three, the ones in column five that I think we heard something about which go beyond the carousel. So right at the top of column three, one example, treat bin is a container that includes an activatable door configured to open and release one or more treats stored in the bin or a rotating vertical wheel like a Ferris wheel or something with notches, baskets to dispense the treats. And then it talks about the carousel. These all seem like alternatives which are right there in the spec. Sure. So I believe the first of those, the activatable door that released the treat is describing that main carousel embodiment. What happens? The carousel rotates at the top. There's an activatable door underneath it that drops a treat down through a chute. So I think that reference is actually still describing that primary container that includes an activatable door. That doesn't look like the carousel is just this sort of wagon wheel pasta-like thing sitting on top of a tray. And in part of what it's sitting on is open and the rest of it is actually a tray. And so as you turn it, eventually what's between the little spokes of the wagon wheel will get into the opening and fall down. That doesn't sound like a container that includes an activatable door. In that scenario, I think, Your Honor, the container is the little wedge within the carousel, and there's an activatable door that opens under the carousel. Am I incorrect about that? There's no activatable door in Figure 3. That's just a hole. But even looking at these alternatives... It's called an opening. Even looking at these alternatives, none of them are a coherent structure, right? to actually dispense a treat from a treat bin to the pet, and a coherent structure that matches what's in the furbo, right? You have to have both of those things. There has to be an entire structure, and it has to match what's in the furbo, either identically or equivalent. And so Doggy Phone keeps pointing to these broadening statements, these alternative embodiment statements, but at no point does the patent or Doggy Phone put those things together into a coherent structure, which is necessary. How do you respond to opposing counsel's argument that there was this, you called it progression of claim construction, and they didn't have an opportunity to respond to the change in claim construction? I think they did have an opportunity to respond. As I mentioned, the original claim construction identified Figures 3 and 4 as corresponding structure. And if you look at Figures 3 and 4, it has that carousel, chute, activatable door limitation. And again, this was sufficient for TOMO Fund to obtain expert reports. One party did obtain expert reports. Even after TOMO Fund obtained a supplemented expert report on that point, Doggy Phone didn't respond. So Doggy Phone has never presented any expert analysis under a means plus function construction for this element with any corresponding structure, regardless of what corresponding structure you're looking at. When was the first time they were put on notice of the evolution of claim construction here? When was the first time they became aware of it? Doggy Phone? The parties in general. I'll put it that way. Sure. The original claim construction order, because it's still pointed to Figures 3 and 4 in the patent. Just to be clear, when you say pointed to 3 and 4, I think you're talking about the bottom of Appendix Page 9, which is a see also Figures 3 and 4. When you say pointed to, that material at least doesn't say. And the full set of corresponding structures is the set represented by 3 and 4. It's just see also after referring more broadly to some of Column 6. So you wouldn't read that to be a limiting identification of structures. I would and we did, as a matter of fact. And that's why we obtained Supplemented Expert Reports. Was a see also cite? Yes, because in particular, if you look at the sentence before that, like this EG sentence, one or more of a carousel slide bent actuator motor for delivering treats, that statement is on its face not sufficient structure to complete this act of dispensing a treat. And you have to have sufficient corresponding structure. So we read this see also Figures 3 and 4 clarification as also identifying the structure of Figures 3 and 4 as the corresponding structure. Can you talk about the system begins transmission issue and why I think one way I think I was understanding the argument that we just heard is that there too there was in effect a change of claim construction. The original claim construction said trigger or causally connected. Triggered by or causally connected by. Causally connected by does not mean the direct cause or the sole cause. But the ultimate summary judgment ruling was that the barking is not enough because sometimes it doesn't do anything, even when it does lead to the text message recipient sending a signal back. It's one of two causes in series and that's causally connected to the beginning of the transmission. Sure. So the original claim construction did not construe begins transmission in response to as triggered by or otherwise causally connected. The court rejected Tomo Fund's proposed construction of triggered where we were pointing to multiple instances in the record of doggy phone saying triggered by. And the court pointed to other instances in the record where doggy phone had said triggered by or otherwise causally connected. And the court in doing so told us limiting this strictly to triggered is not warranted. Therefore, at the end of the day, we ended up with plain and ordinary meaning.  So that's not so. OK. So you're saying it's not as though there was a claim construction at the claim construction stage that said triggered for anything that constitutes causally connected. Correct. OK. Correct. Yes. The construction was plain and ordinary meaning, which doggy phone application was. But what you just told me suggested that she thought it was something more generous than just triggered. I'm not sure that the district court judge thought it was something more generous than that. But she rejected your argument that it was just triggered. Yes, yes. The point was it wasn't warranted to limit it to that one explicit term by what was on the record. It doesn't mean that plain and ordinary meaning is not warranted. What was the underlying thing that felt too narrow about triggered? It was the statements in the record, in other portions of the record, where doggy phone had said triggered by or otherwise causally connected. So the court wasn't comfortable limiting to just triggered by because of these other statements in the record that said triggered by or otherwise causally connected. And how, as a substantive matter, did the ultimate summary judgment determination, which said the thing that begins the transmission is the act of the human saying, show me.  I'm sorry, how does that differ from a trigger construction? Trigger sounds like, you know. Trigger implied the plain and ordinary meaning of in response to.  I mean, the court did not reference triggered or causally connected at all when it was examining the meaning of in response to. The court said in response to means in response to because it's the plain and ordinary meaning of that term. And when looking at the. I guess another way to ask it is on the ultimate view that is, that underlies the summary judgment ruling, how is that consistent with having rejected the, your proposed requirement of trigger in the claim construction proceeding? In its analysis. What distance is there between those two things? To be honest, I'm not sure, Your Honor, but the court didn't analyze the claim under the term triggered. The court did not analyze it in that lens at all. I mean, if they looked at the, if the court went to plain and ordinary meaning and then implicitly used trigger, then it's still wrong if trigger is too limiting. But there's no evidence that it implicitly used trigger. The court relied on and pointed to expert analysis from Tomofund's expert exploring what in response to, what that response of relationship was where Tomofund's expert. I mean, the other way to read it is that the in response to has to be indirect response to. Because otherwise, clearly the live audio is ultimately in response to the pet's barking. I think that's where this begins term comes into play, right? I think what you're... You're moving me to a third definition. I'm not trying to move you. I think there's an interplay between the use of the word begins and this responsive relationship that we're talking about, right? So we're not just saying that the transmission broadly is responsive to input from the pet. We're saying transmission begins in response to the pet. We're isolating a single point in time and the thing that that is responsive to. And Tomofund's expert opined it's responsive to the user's action, not input from the pet. And also DoggyPhone in its own summary judgment briefing explicitly characterized it that way. So you're not keying on in response to. You're keying on begins. The interplay of those two things. I think they're both relevant.  Make that conclusion. This is a problem when you get plain and ordinary meaning and it's hard to parse it in terms of the application to the specific facts. I thought the district court did at least once, maybe twice even, italicize the word begins to say this is the problem. From appendix page 37, I thought that the district court did what Judge Toronto indicated. I'm sorry, what's that? Maybe I'm answering questions as opposed to you, but I was thinking appendix page 37 might be helpful in response to Judge Toronto and Judge Hughes' questions. Sure, and there the court, again as I mentioned, is quoting DoggyPhone's own most of the summary judgment. Beginning at line 2, DoggyPhone states, Furbo transmits a notification and begins transmission of audio and or video to the pet, to the user's mobile device when the user clicks on the received notification. Similarly, beginning line 7, Furbo transmits a notification to the user's mobile device and begins transmission to the user's mobile device when the user clicks on the received notification. And again, that's quoting DoggyPhone's own summary judgment. Well, we understand that algorithm. The real problem is, is this claim language which says begins in response to, is it implicitly read as begins in direct response to or just begins in some causal connection to? I don't think any causal connection is sufficient. Primarily because, so DoggyPhone sort of characterized it in this but-for way. How do we know if we don't have a claim construction? But if you extract, well, we do have a claim construction. It's plain and ordinary meaning. And DoggyPhone advocated for that. DoggyPhone can't now say that plain and ordinary meaning is not sufficient and we have to reverse the trial court when it asks for that claim construction. Do you agree that based upon the way the district court looked at this claim term and applied it to the infringement question here, that it implicitly reads in the word direct, that it begins in direct response to the pet's barking? No, I don't. Isn't that the basis for non-infringement, that it didn't begin in response to the pet? It began in response to the owner? Yes, but I don't think you have to read in the word direct there. Let's see if the logical reading of that conclusion. That's just what in response to means in the context of beginning transmission, right? It could mean in a causal chain, too, and this is certainly a causal chain. The only way you get what you want is if we get implicitly read in direct. If we say direct doesn't belong there, then how do we know that there's not a question of fact, whether this begins in response to the pet or not? Well, for one thing, it's a construction issue, right, which DoggyPhone- Well, it's a construction issue, and then once we get a construction, it's a question of general material fact of whether there's infringement. And if direct isn't implicitly read in, then how do we know that there's not a general issue of whether it's in response to the pet or not? Their view is it's ultimately in response to the pet, because the pet's the one that starts the tune, that sends the text, that allows the owner to request the video. Yeah, but that's based on this begins a process of transmitting, which is not what the claim says, right? The claim says begins transmission. It doesn't say begins a process of transmission. Maybe a good note to end on would be do you agree with this statement, which I think is a very friendly statement, that if we agree with the district court's ruling on summary judgment of non-infringement on one of the possible limitations, in that sense you would win? Absolutely, yes. Thank you. Thank you for your argument. We have three minutes. Thank you, Your Honor. I assume there are no questions on the third limitation. I'll focus just briefly on the two that were discussed. With respect to the triggered or causally connected, I think the most important of those limitations, the court was very interested by the discussion that happened, because it's true the doggy phone advocated the plain and ordinary meaning, because based on the district court's discussion of the claim construction, it understood the plain and ordinary meaning to be triggered or causally connected, which is consistent with the IPR. Some of those are unclear, because you got up here on your opening and said the district court gave a claim construction that triggered or causally corrected. That's not correct, is it? The district court gave a plain and ordinary meaning construction. You're right, Your Honor. I guess what I understand is that if you read the whole record, that that's the understanding of what the plain and ordinary meaning was, but you understand those are two distinct things. I do understand, Your Honor. But I think that's what led to the problem. You know, we talk about this misdirect, because coming out of the claim construction, that was you. Did you argue for plain and ordinary meaning? We argue specifically triggered or causally connected in the briefing on claim construction. We argue that is the plain and ordinary meaning. That's the plain construction. Did you argue that this claim term needed to be construed and that the proper construction included whatever we've been talking about with the causally linked? You didn't do that, did you? I don't believe we did, Your Honor. You argued for plain and ordinary. That's right. But, Your Honor, coming out of claim construction, what happened was that based on what the court said at claim construction, Doggy Phone believed that that term, limitation, meant triggered or causally connected. When you saw there was a dispute between the two of you about triggered or triggered or causally connected, why didn't you ask the district court to specifically construe these claims? I mean, now we don't know. You're asking us, basically, to construe them, because they don't have a plain and ordinary meaning that necessarily works for you or works for her. The reason I think we didn't, Your Honor, was because of the way the order was presented. We knew that the district court rejected TAMA funds, triggered only, and said, no, no, no, this has to mean triggered or causally connected. So coming out of claim construction, Doggy Phone believed that is how it would be applied at summary judgment. So when we got to summary judgment and the court suddenly said, oh, no, no, I didn't mean causally connected. I meant direct or the sole cause, as Judge Toronto has suggested. And that's the problem, is that triggered or causally connected certainly does include what is occurring right here, and a reasonable jury could and Doggy Phone believes would find in that situation there to be infringement. Thank you, Your Honor. Thank you. Thanks to both counsel. The case is submitted.